IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LYNN RUDOLPH,

                          Plaintiff,

            vs.                                   Civil Action No.
                                                  9:01-CV-1549 (FJS/DEP)

GLENN S. GOORD, *et al.*,

                          Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

LYNN RUDOLPH, *Pro Se*
85-A-4738
Shawangunk Correctional Facility
Box 700
Wallkill, NY 12589

FOR DEFENDANTS:

HON. ELIOT SPITZER                    MEGAN M. BROWN, ESQ.
Attorney General of the               Assistant Attorney General
State of New York
The Capitol
Albany, New York  12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

AMENDED REPORT AND RECOMMENDATION

Plaintiff Lynn Rudolph, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 asserting claims against the Commissioner of the New York State Department of Correctional Services ("DOCS") and several other DOCS employees.  Plaintiff's claims stem from his administrative, and later disciplinary, confinement within a Special Housing Unit ("SHU") for an aggregate period of 133 days.  While plaintiff's complaint sets forth a number of separate causes of action, the essence of plaintiff's claims is that his SHU confinement represented the deprivation of a liberty interest imposed without the requisite procedural due process.  Plaintiff also contends that the conditions which he experienced while confined within the SHU were tantamount to constitutionally proscribed cruel and unusual punishment.

Currently pending before the court is a motion by the defendants seeking summary judgment dismissing plaintiff's complaint on a variety of bases.  In their motion, *inter alia*, defendants urge the court to find, as a matter of law, that plaintiff's SHU confinement did not represent the deprivation of a constitutionally significant liberty interest, and that in any event he was afforded the required due process in connection with that deprivation.  Defendants also argue that plaintiff has failed to establish the

requisite level of personal involvement of the various defendants in the

violations alleged, and additionally that his claims are barred by collateral

estoppel based upon an unsuccessful state court challenge to his SHU

confinement.  For the reasons that follow, I recommend that defendants'

motion be granted and plaintiff's complaint dismissed in its entirety.

I.      BACKGROUND

At the times relevant to his claims, Rudolph was a New York State

prison inmate incarcerated within the Clinton Correctional Facility

("Clinton").  Senkowski Decl. (Dkt. No. 31) ¶ 4.  On March 16, 2000, as a

result of an investigation by the DOCS Inspector General into alleged

unlawful solicitation on his part, Rudolph was placed in administrative

segregation within the Clinton SHU.  Brown Aff. (Dkt. No. 30) Exh. E.

That segregation was ordered based upon a recommendation by Captain

R. Faulkner, who is not a defendant in this action, and authorized by

Deputy Superintendent of Security J. Wood, a named defendant.  *Id.*

Plaintiff was notified of the issuance of the recommendation, and an

administrative hearing was subsequently conducted, beginning on March

31, 2000 and culminating on April 3, 2000, to address the segregation

proposal.  *Id.*  In preparation for that hearing, plaintiff was provided with an

employee assistant, selected by him from a list of three available employee assistants, and was allowed to present the testimony of Imam Hajar, a witness called at his request. *Id.* During that hearing testimony was taken from various other witnesses, including Corrections Officer Grom, Captain Faulkner, and Deputy Inspector Dunleavy, all outside of plaintiff's presence either by his choice or due to the confidential nature of the information being elicited. *Id.* At the conclusion of the proceeding the assigned hearing officer issued a determination approving of the administrative segregation, finding that plaintiff represented a threat to the safety and security of the facility.[1] Brown Aff. (Dkt. No. 30) Exh. E.

Plaintiff's administrative segregation status was reviewed by a committee comprised of his guidance counselor, a member of security staff, and either committee chair Deputy Wood or, in his absence, Captain Faulkner, on April 1, 10, 17, and 24, 2000, and again on May 8, 2000. Brown Aff. (Dkt. No. 30) Exh. E; Senkowski Aff. (Dkt. No. 31) ¶¶ 17-18. Following each review a recommendation of continued SHU confinement was made by the committee and approved by Clinton Superintendent Daniel Senkowski*. Id.*; Senkowski Decl. (Dkt. No. 31) ¶¶ 19-21.

---

[1]     The hearing officer designated to preside over the administrative segregation hearing is not named as a defendant in plaintiff's complaint.

On May 5, 2000 a misbehavior report was issued by Kenneth Torreggiani, a senior investigator with the DOCS Inspector General's office, accusing plaintiff of unlawfully soliciting goods or services from non-family members (rule 103.20) and violating governing telephone regulations (rule 121.11).  Torreggiani Decl. (Dkt. No. 33) ¶ 12; Brown Aff. (Dkt. No. 30) Exh. A.  That misbehavior report was a product of the IG's investigation into allegations that plaintiff had unlawfully solicited goods and services.  Torreggiani Decl. (Dkt. No. 33) ¶¶ 6-13.

As a result of the issuance of the misbehavior report a Tier III hearing was scheduled to be held, beginning on May 18, 2000, with Captain Carey assigned to preside as the hearing officer.[2]  Brown Aff. (Dkt. No. 30) Exhs. B, C.  In preparation for the hearing plaintiff was advised of his rights, and was provided with an employee assistant. Carey Decl. (Dkt. No. 32) ¶¶ 6, 7.  A disciplinary hearing was subsequently conducted beginning on May 18, and continued until May

---

[2]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

25, 2000.  *Id.* ¶ 6.  At the outset of the hearing plaintiff entered a plea of not guilty to both charges set forth in the misbehavior report.  *Id.* ¶ 8; Rudolph Aff. (Dkt. No. 42) ¶ 10(A).  The disciplinary hearing was tape-recorded, and the tape-recording of the proceeding was preserved by Hearing Officer Carey.  Carey Decl. (Dkt. No. 32) ¶¶ 6, 9.

During the disciplinary hearing live testimony was taken, including that of a confidential informant who was questioned outside of the plaintiff's presence in light of expressed safety concerns.  *Id.* ¶¶ 10, 11; Brown Aff. (Dkt. No. 30) Exh. B.  Plaintiff requested that two witnesses be called to testify on his behalf at the hearing, including Imam Hajar and Michael Ciaffa.  Rudolph Aff. (Dkt. No. 42) ¶ 10(C); Carey Decl. (Dkt. No. 32) ¶ 12.  That request was denied, however, based upon the designated witnesses' lack of involvement in the incidents alleged in the misbehavior report.  Carey Decl. (Dkt. No. 32) ¶ 12.

At the close of the disciplinary hearing plaintiff was found guilty of soliciting, but was exonerated of the telephone violation set forth in the misbehavior report.  *Id.* ¶ 14; Brown Aff. (Dkt. No. 30) Exh. B.  As a result of that finding Hearing Officer Carey imposed a penalty which included twenty-four months of SHU disciplinary confinement, with a corresponding

loss of telephone, packages, and commissary privileges.  Carey Decl. (Dkt. No. 32) ¶ 14; Brown Aff. (Dkt. No. 30) Exh. C.  That finding was later affirmed on appeal to Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, although the duration of the assigned penalty was reduced to two months.  Brown Aff. (Dkt. No. 30) Exh. B; Selsky Aff. (Dkt. No. 35) ¶¶ 35-36.  Plaintiff was ultimately released from SHU confinement on July 15, 2000 after having served a total of 133 days of administrative and disciplinary SHU confinement, in the aggregate.[3]  Rudolph Aff. (Dkt. No. 42) ¶ 11.

Plaintiff sought state court review of the disciplinary sanction imposed by commencing a proceeding under Article 78 of the New York Civil Practice Law and Rules.  Rudolph Aff. (Dkt. No. 42) ¶ 12.  In his petition in that proceeding, which was transferred to and considered by the New York State Supreme Court, Appellate Division, Third Judicial Department, plaintiff advanced substantive and procedural due process arguments, and requested that the disciplinary hearing results be annulled.  Brown Aff. (Dkt. No. 30) Exh. F.  That proceeding resulted in

---

[3]     It appears that on or about June 6, 2000 plaintiff was transferred out of Clinton and into the Upstate Correctional Facility, where he was placed in that facility's SHU to serve the remaining portion of his disciplinary confinement.  Senkowski Decl. (Dkt. No. 31) ¶ 4; Brown Aff. (Dkt. No. 30) Exh. D.

the issuance of a decision on June 7, 2001 rejecting plaintiff's arguments, and confirming the disciplinary adjudication.  *See Rudolph v. Goord*, 284 A.D.2d 640, 725 N.Y.S.2d 240 (3d Dept. 2001).  Plaintiff's appeal from that determination was dismissed by the New York Court of Appeals on September 20, 2001.  *See Rudolph v. Goord*, 96 N.Y.2d 936, 759 N.E.2d 374, 733 N.Y.S.2d 375 (2001) (Table).

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on October 12, 2001.  Dkt. No. 1. Named as defendants in plaintiff's complaint are DOCS Commissioner Glenn S. Goord; DOCS Director of Special Housing/Inmate Disciplinary Program Donald Selsky; IG Investigator Kenneth Torreggiani; Clinton Superintendent Daniel Senkowski; Clinton Deputy Superintendent of Security J. Wood; Corrections Captain Carey; and Corrections Lieutenant Baldwin.  Following service upon them, defendants Goord, Selsky, Torreggiani, Senkowski, and Carey interposed an answer to plaintiff's complaint; that answer was filed on March 18, 2002.[4]  Dkt. No. 17.

On September 30, 2003, following the close of discovery, defendants filed a motion seeking summary judgment dismissing plaintiff's

---

[4]      As will be seen, defendants Wood and Baldwin were never served, nor have they appeared in the action.  *See* pp. 11-15, *post.*

complaint on a variety of grounds.  Dkt. Nos.  28-36.  In their motion,

defendants argue that 1) plaintiff's complaint should be dismissed as

against defendants Wood and Baldwin, based upon lack of personal

jurisdiction; 2) plaintiff is collaterally estopped from pursuing his due

process claims, based upon the unfavorable determination of his Article

78 petition; 3) plaintiff's due process claims are deficient, in that he has

failed to establish the deprivation of a constitutionally cognizable liberty

interest; 4) plaintiff's procedural due process claims fail as a matter of law,

based upon his failure to establish the denial of any procedural due

process rights; 5) plaintiff's claims against the supervisory defendants

named in his complaint, including Goord, Selsky, and Senkowski, should

be dismissed based upon their lack of personal involvement in the

constitutionally offensive conduct alleged; 6) plaintiff's complaint fails to

state a claim upon which relief may be granted as to defendants Wood,

Baldwin and Torreggiani; and 7) defendants are shielded from liability by

virtue of their qualified immunity.[5] Plaintiff has since submitted papers in

---

[5]        Defendants' motion also challenges the allegedly conclusory statements
made by plaintiff in support of his claims, particularly those regarding the conditions of
his SHU confinement.  Because the sufficiency of those allegations is discussed during
the portion of this opinion which addresses plaintiff's claimed liberty interest
deprivation, I have not separately dealt with this argument.  *See* pp. 15-18, *post.*; *see
also* pp. 26-29, *post.*

opposition to defendants' motion.  Dkt. No. 42.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4.  Once that burden is met, the opposing party must show, through affidavits or

otherwise, that there is a material factual issue for trial.[6]  Fed. R. Civ. P.

56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at

250, 106 S. Ct. at 2511.  When deciding a summary judgment motion, the

court must resolve any ambiguities and draw all inferences from the facts

in a light most favorable to the nonmoving party.  *Wright v. Coughlin*, 132

F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate

where "review of the record reveals sufficient evidence for a rational trier

of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313

F.3d 713, 719 (2d Cir. 2002) (citation omitted).

B.    Failure To Serve Defendants Wood and Baldwin

In their motion, defendants seek dismissal of plaintiff's claims as

against defendants Wood and Baldwin based upon lack of jurisdiction.

Defendants' argument is premised upon plaintiff's failure to effectuate

service upon the two despite passage of more than 120 days – the period

allotted under Federal Rule of Civil Procedure 4(m) for service absent an

---

[6]      A material fact is genuinely in dispute "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when
defending against summary judgment motions, they must establish more than merely
"metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Med.
Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider
whether *pro se* plaintiff understood nature of summary judgment process).

extension by the court – since the time of filing of his complaint.  Plaintiff

opposes the motion, attributing the failure of service to the inaction of the

United States Marshal.

Rule 4(m) of the Federal Rules of Civil Procedure authorizes

dismissal where a summons and complaint is not served within 120 days

after filing of the complaint, absent a showing of good cause.[7]  Fed. R.

Civ. P. 4(m); *Shuster v. Nassau Cty.*, No. 96 Civ. 3635, 1999 WL 9847, at

*1 (S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no

service within 120 days after filing of the complaint); *Romand v.*

*Zimmerman*, 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.) (120-

day period for service of a summons and complaint by a plaintiff under

Fed. R. Civ. P. 4(m) applies to *pro se* plaintiffs as well as those

represented by counsel).  The Second Circuit has held, however, that a

court can disregard strict adherence to the 120-day limit if plaintiff

establishes "good cause [for] why such service was not made."

*Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986) (citations

omitted).  In *Romandette*, the Second Circuit held that where the

---

[7]        This statutory one hundred twenty day period is further constricted in this
district by virtue of General Order no. 25 of this court as well as Northern District of
New York Local Rule 4.1(b).

incarcerated plaintiff provided the Marshal with the information necessary

to identify the defendants the failure of the Marshal's Service to effectuate

service was sufficient to establish good cause for being excused from

Rule 4(m)'s requirements. *Id.*; *see also Duncan v. Timo*, No. 99 CIV.

0978, 2000 WL 124823, at *1 (S.D.N.Y. Feb. 2, 2000) (120 day rule is not

strictly construed against *pro se* plaintiff); *Hurlburt v. Zaunbrecher*, 169

F.R.D. 258, 259 (N.D.N.Y. 1996) (Smith, M.J.) (citing cases which held

that courts are reluctant to dismiss a *pro se* action for Marshal's failure to

serve).

The docket sheet and plaintiff's submission in opposition to

defendants' summary judgment motion reflect that plaintiff apparently

provided the United States Marshal's Office with the proper

documentation to effect service, and the Marshals attempted service by

mail.  Dkt. No. 42, Exh. G.  Upon doing so, the Marshals were informed by

return letter from the DOCS that defendant Wood had retired from the

DOCS.  Dkt. No. 7.  Having obtained no response from defendant

Baldwin or the DOCS to its service of the complaint, the Marshals sent a

notice to plaintiff notifying him that the "Acknowledgment of Receipt of

Summons and Complaint by Mail" that had accompanied the summons

-13-

and complaint sent to defendant Baldwin was not returned by him within thirty days of that mailing; the letter further informed plaintiff that any further attempts by the Marshal to serve defendant Baldwin required another submission of the USM 285 with summons and complaint, and that failure by plaintiff to complete such service might result in dismissal of plaintiff's action against defendant Baldwin.  Dkt. No. 15.

Inasmuch as defendants Wood and Baldwin have not been served or otherwise appeared in the action within the appropriate time period, this court has never acquired jurisdiction over them.  *See*, *e.g.*, *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).  Moreover, the passage of more than two years without any apparent effort by plaintiff to follow up with the court or the Marshal's service concerning the failure to serve defendants Wood and Baldwin militates in favor of the requested dismissal.  I am somewhat reluctant to recommend dismissal of plaintiff's claims against defendants Baldwin and Wood based solely on failure of service, however, since I find that the Marshal's inability to complete

-14-

service could constitute sufficiently good cause for plaintiff's failure to arrange for service upon them.  *See Romandette*, 807 F.2d at 311; *see also Armstrong v. Sears*, 33 F.3d 182, 183-84, 188 (2d Cir. 1994) (holding that upon U.S. Marshal's initial unsuccessful attempt to obtain a waiver of service pursuant to Rule 4(d) Marshal was obligated to effect service pursuant to Rule 4(e) without requiring fresh USM-285 form from *in forma pauperis* plaintiff).  I therefore recommend that defendants' motion to dismiss defendants Wood and Baldwin from the action based upon failure of service be denied.[8]

### C.    Procedural Due Process

Defendants seek dismissal of the procedural due process claims asserted by the plaintiff on a variety of grounds, including their contention that plaintiff cannot establish the deprivation of a liberty interest, as well as the claim that he received procedural due process in connection with that deprivation.  Defendants also argue that in any event plaintiff's due process claims are foreclosed by collateral estoppel.

---

[8]    As will be seen, denial of this portion of defendants' motion is academic, since the causes of action interposed by Rudolph against defendants Wood and Baldwin are subject to dismissal on their merits.  For this reason, I have made no recommendation regarding how to assist the plaintiff in achieving service on these defendants.

To successfully state a claim under 42 U.S.C. § 1983 for denial of

due process arising out of a disciplinary hearing, a plaintiff must show that

he or she both 1) possessed an actual liberty interest, and 2) was

deprived of that interest without being afforded sufficient process.  *See*

*Tellier v. Fields*, 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted);

*Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir.

1996).

### 1.    Liberty Interest

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the

United States Supreme Court held that to establish a constitutionally

protected liberty interest, a plaintiff must sufficiently demonstrate that 1)

the State actually created a protected liberty interest in being free from

segregation; and that 2) the segregation would impose an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of

prison life."  *Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80;

*Hynes*, 143 F.3d at 658.  It is now firmly established in this circuit that

New York has, by its regulatory scheme, created a liberty interest in not

being confined to a facility SHU.  *See Palmer v. Richards,* 364 F.3d 60, 64

n.2 (2d Cir. 2004) (citing *Welch v. Bartlett,* 196 F.3d 389, 394 n.4 (2d Cir.

1999)); *see also Alvarez v. Coughlin*, No. 94-CV-985, 2001 WL 118598, at

*6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.)).  The liberty interest analysis in this

case thus turns on whether the conditions of plaintiff's SHU confinement

rose to the level of an atypical and significant hardship under *Sandin*.

The issue of atypicality in a *Sandin* inquiry normally presents a

question of law.[9]  *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000);

*Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).  When determining

whether a plaintiff relegated to SHU confinement has been deprived of a

liberty interest, district courts must examine the specific circumstances of

confinement, including analysis of both the length and conditions of

confinement.  *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329,

335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir.

1997).  In cases involving shorter periods of segregated confinement

where the plaintiff has not alleged any unusual conditions, a detailed

explication of the reasoning for finding no such deprivation is not

necessary.[10]  *Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

---

[9]     In cases where there is factual dispute concerning the conditions or
duration of confinement, however, a court may nonetheless find it appropriate to
submit those disputes to a jury for resolution.  *Colon v. Howard*, 215 F.3d 227, 230-31
(2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

[10]     While not the only factor to be considered, the duration of a disciplinary
keeplock confinement remains significant under *Sandin*.  *Colon*, 215 F.3d at 231.

In this case both plaintiff's complaint and the affidavit given by him in opposition to the instant motion go well beyond the mere allegation that he was subjected to normal SHU conditions of confinement over the 133 days at issue.  Plaintiff has made specific allegations that in addition to the conditions ordinarily experienced by an inmate confined to a facility SHU operated in accordance with DOCS regulations, and described by defendant Selsky in his affidavit, *see* Dkt. No. 35, ¶¶ 2-32, he was 1) exposed to double bunking with a sexual predator; 2) subjected to severe mice infestation and mice feces, as well as the continuous smell of urine, garbage and feces; 3) experienced severe bat infestation with resulting bat feces; and 4) lacked adequate storage bins or lockers to keep mice from eating or damaging food and clothing.  *See*, *e.g.*, Rudolph Aff. (Dkt. No. 42) ¶ 14.  These and the many other allegations regarding the SHU conditions experienced by the plaintiff preclude a finding, on a motion for summary judgment, that as a matter of law 133 days of exposure to those

_____

Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see id.* at 232 n.5), the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not.  *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure).  The Second Circuit, however, has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights."  *Palmer*, 364 F.3d at 64 (citations omitted).

conditions did not constitute an atypical and significant hardship in comparison to the ordinary incidents of prison life.  *See Palmer*, 364 F.3d at 64-66.  I therefore recommend rejection of defendants' argument that, as a matter of law, plaintiff cannot establish the deprivation of a constitutionally significant liberty interest.

### 2.      Procedural Safeguards

In their motion defendants also seek a finding, as a matter of law, that plaintiff was not denied procedural due process even if deprived of a protected liberty interest.  This portion of defendants' motion is based both upon the merits and, in the case of plaintiff's third and fifth causes of action, which allege a deprivation of due process associated with the Tier III hearing and events leading up to it, on collateral estoppel.  Defendants' collateral estoppel defense is premised upon plaintiff's unsuccessful Article 78 challenge to the disciplinary hearing results.

### a.      Collateral Estoppel

The Second Circuit has provided guidance concerning the preclusive effects to be given to prior judicial determinations involving the same subject matter as is presented in the case under consideration. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002).  In *Marvel*,

the Second Circuit noted that state law governs the preclusive effect to be given to a state court determination.  310 F.3d at 286.  The Full Faith and Credit Clause requires that a federal court give the same preclusive effect to a state judgment as would be ascribed by that state court.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984) (citing *Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980)).  The court in *Marvel* went on to note, however, that "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel."  *Marvel*, 310 F.3d at 286 (citing *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001)).

As the Second Circuit explained in *Marvel*, claim preclusion – often referred to as res judicata – requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating claims that were or could have been raised in the prior action.  *Marvel*, 310 F.3d at 286-87; *see also Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 28 (2d Cir. 1986) (citing, *inter alia*, *Migra*), *overruled on other grounds*, *Taylor v. Vermont Dep't of Ed.*, 313 F.3d 768 (2d Cir. 2002).

In this case it is clear, based upon well-established case authority,

that the prior unfavorable Article 78 determination did not foreclose the plaintiff from commencing this subsequent § 1983 action for damages, since damages are unavailable to compensate a party in an Article 78 proceeding for civil rights violations. *Davidson v. Capuano*, 792 F.2d 275, 278-80 (2d Cir. 1986).  Accordingly, plaintiff's claims for damages in this section 1983 action are not barred by the prior Article 78 proceeding, even assuming that all of the other requirements for claim preclusion can be met.

This finding, however, does not end the inquiry.  Under the doctrine of issue preclusion, a party that has had a full and fair opportunity to litigate an issue of fact or law may be precluded from relitigating the issue once it has been decided against the party or its privy. *Marvel*, 310 F.3d at 288-89.  Defendants argue that if res judicata does not apply, collateral estoppel should nonetheless serve to bar the plaintiff from relitigating the issue raised in the Article 78 proceeding – that is, whether he was denied procedural due process during the course of the disciplinary proceedings against him.

As the petitioner in the Article 78 proceeding, plaintiff was presumably provided a full and fair opportunity in the state courts to

-21-

litigate the issue of whether his procedural due process rights were violated as a result of the disciplinary proceeding. In dismissing Rudolph's Article 78 petition, the Appellate Division squarely determined that no such violation had occurred. Specifically, the Appellate Division "reject[ed] petitioner's claim that the misbehavior report was not sufficiently detailed in order for him to prepare a defense", as well as plaintiff's contention that the hearing was not commenced in a timely manner. 284 A.D.2d at 640-41, 725 N.Y.S.2d at 240. The Appellate Division also found plaintiff's claim that he was denied an adequate opportunity to prepare his defense to be baseless, noting that the material which he requested in preparation for the hearing "either did not exist or was provided to petitioner at the hearing." *Id.*

Based upon the state court's determination, I find that plaintiff should be precluded from relitigating his procedural due process claims in this proceeding. I therefore recommend dismissal of plaintiff's third and sixth causes of action on this basis, as a matter of law.[11]

b.      Merits of Plaintiff's Procedural Due Process Claim

---

[11]      It does not appear that either in his Article 78 petition or through his complaint in this action the petitioner has challenged the sufficiency of the evidence supporting the hearing officer's finding of guilt.

Addressing the merits of plaintiff's procedural due process claims, defendants maintain that the record contains no evidence of any due process violation.

The procedural protections to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974). Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a fair and impartial hearing officer; 4) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 5) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff*); *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).

Plaintiff's due process claims stem from the defendants' alleged failure to provide him with the documentary evidence necessary to

-23-

prepare a defense (third cause of action), and the denial of his right to call two witnesses to testify on his behalf (sixth cause of action).

A careful review of plaintiff's complaint and accompanying materials, including a legal memorandum, as well as his affidavit in opposition to defendants' motion, fails to disclose precisely what information plaintiff maintains should have been provided, in advance of the disciplinary hearing, but was not.  *See*, *e.g.*, Plaintiff's Memorandum (Dkt. No. 1) ¶ 6. Generally speaking, plaintiff appears to have requested, but was not provided, various documents such as transcripts of the telephone conversations and log book entries.  *Id.*  Plaintiff also complains of the denial of his request to call two witnesses to testify at the hearing, although the plaintiff's submissions are lacking in any showing of what relevant testimony would be offered by the two requested witnesses, Imam Hajar and Michael Ciaffa.  Under *Wolff*, an inmate subjected to a disciplinary hearing does not have the unfettered right to conduct discovery, or to call witnesses to testify on his or her behalf; instead, some minimal showing must be made by the inmate that the witnesses can offer relevant information before such testimony may be required.  *See Baxter v. Palmigiano*, 425 U.S. 308, 320-22, 96 S. Ct. 1551, 1559-60 (citing

-24-

*Wolff*).  In this case no such showing has been made by the plaintiff.

In sum, in the event that the court deems it appropriate to examine the merits of plaintiff's procedural due process claims, notwithstanding the collateral estoppel bar based upon the Article 78 proceeding, I recommend that the claim be rejected on its merits, and that plaintiff's third and sixth causes of action be dismissed.[12]

D.    Failure to Give Plaintiff Credit for Time Served in Administrative Segregation

Plaintiff's first and second causes of action focus upon the fact that he did not receive credit, as against the disciplinary penalty ultimately imposed following his disciplinary hearing, for the fifty-one days spent in administrative segregation.  Plaintiff maintains that this failure constituted a violation of his Fourteenth Amendment due process rights and additionally resulted in his experiencing cruel and unusual punishment, in violation of the Eighth Amendment.

The plaintiff has cited no cases supporting his contention that he is constitutionally entitled to such credit, nor am I aware of any that hold that

---

[12]    In light of this recommendation I find it unnecessary to address the defendants' qualified immunity argument with regard to the procedural due process claims.  *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151 (2001) (initial inquiry in qualified immunity analysis requires determination of whether any constitutional right was violated at all).

an inmate's Eighth or Fourteenth Amendment rights are abridged when he

or she is subjected first to administrative segregation, with the requisite

due process, and later to discipline for similar acts, after a hearing, without

receiving credit for "time served" in administrative SHU confinement.

Presumably, the hearing officer considering the disciplinary charges

against Rudolph was apprised of the fact that the plaintiff had already

been assigned to administrative SHU segregation, and took that into

consideration in determining the appropriate penalty to impose based

upon his finding of guilt on one of the two charges at issue.  Plaintiff

having failed to demonstrate the deprivation of a constitutional right as a

result of this failure, his first and second causes of action are subject to

dismissal as a matter of law.

E.    Eighth Amendment Violations

Plaintiff's complaint includes several claims including alleged Eighth

Amendment violations, including his fourth cause of action, which

addresses defendants' alleged failure to provide him with documentary

evidence necessary to prepare a defense for his disciplinary hearing, and

his eighth cause of action, which asserts that the conditions which he

faced within the Clinton and Upstate SHU units represented cruel and

unusual punishment.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  The Eighth Amendment does not mandate comfortable prisons, but yet it does not tolerate inhumane ones either; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*,

-27-

No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

Against this backdrop I find that plaintiff cannot sustain his burden of establishing that some of the conditions experienced by him represented cruel and unusual punishment; certain of his Eighth Amendment claims are legally deficient.  Specifically, plaintiff's fourth cause of action under the Eighth Amendment plainly addresses the perceived procedural shortcomings associated with his disciplinary hearing, and as such raises procedural due process concerns which are redundant of his Fourteenth Amendment claims, but does not implicate Eighth Amendment cruel and unusual punishment concerns, without more.

With respect to plaintiff's eighth cause of action, analysis of that claim in light of guiding Eighth Amendment principles presents a closer

-28-

question.  Plaintiff has alleged that while confined within the SHU facilities

at both Clinton and Upstate he faced undesirable conditions, including,

*inter alia*, severe mice and bat infestation, with resulting feces in his

clothing, bed, and cell; inadequate clothing for outdoor recreation; and

garbage and human feces in the gallery area outside his cell.  The Second

Circuit has held that allegations of comparable conditions can at least

raise an issue of fact as to the Eighth Amendment.  *Gaston v. Coughlin*,

249 F.3d 156, 166 (2d Cir. 2001) (reinstating Eighth Amendment claims of

frigid temperatures, rodent infestation, and unsanitary conditions outside

cell).

     F.    <u>Administrative Confinement Due Process Claims</u>

In his complaint plaintiff also asserts a due process violation

associated with his administrative segregation.

As is the case with disciplinary SHU confinement, a prison inmate is

entitled to at least minimal due process when being involuntarily placed in

administrative confinement, particularly when that confinement entails the

deprivation of a liberty interest including by virtue of the length of such

confinement.  *See Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998).  The

required due process, particularly for an administrative confinement of

only fifty-one days, as experienced by the plaintiff, however, carries with it only minimal due process requirements.  In *Hewitt v. Helms*, the Supreme Court defined the procedural due process to which an inmate is entitled when placed in administrative segregation.  459 U.S. 460, 103 S. Ct. 864 (1983).  The Court held that under these circumstances an inmate is entitled to "an informal, nonadversary review," occurring "within a reasonable time" following the inmate's transfer to administrative segregation, where the inmate "receive[s] some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation."[13]  *Hewitt*, 459 U.S. at 472, 476, 103 S. Ct. at 872, 874.  Additionally, since "administrative segregation may not be used as a pretext for indefinite confinement of an inmate[,]" prison officials must periodically review their decision to ascertain whether a prisoner remains a security risk.  *Id.* at 477 n.9, 103 S. Ct. at 874 n.9.  While these reviews must be "meaningful and not simply perfunctory", *McClary*, 4F.Supp.2d at 213 (citing *Giano v. Kelly*, 869 F.Supp. 143, 150-51 (W.D.N.Y. 1994)), the

---

[13]      At least one court has held that these essential elements of minimal due process are easily satisfied by the detailed regulations that govern placement of inmates in administrative segregation in DOCS facilities.  *McClary v. Kelly*, 4 F.Supp.2d 195, 213 (W.D.N.Y. 1998).

Supreme Court made it clear in *Hewitt* that they

> will not necessarily require that prison officials permit the submission of any additional evidence or statements.  The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner – which will have been ascertained when determining [whether] to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.  Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of – most typically, the progress of the investigation.

*Hewitt*, 459 U.S. at 477 n.9, 103 S. Ct. at 874 n.9.

The facts in this case reflect that plaintiff was placed in administrative confinement based on the recommendation of Captain Faulkner, and authorization of Deputy Superintendent of Security Joseph Wood.  Plaintiff was provided with a copy of the administrative recommendation, and thus received notice of the recommendation.  A hearing was subsequently conducted with respect to the recommendation, and plaintiff was given an opportunity to present his views concerning the proposed segregation during that proceeding.  Additionally, at the hearing to address the administrative segregation recommendation plaintiff was permitted to present witnesses, and received a written notice of the hearing officer's determination.  Thereafter, reviews of plaintiff's

administrative segregation were performed by a three-member committee on a weekly basis.

Based upon the foregoing events I find, as a matter of law, that the plaintiff cannot support his due process deprivation claim in connection with his administrative SHU confinement.  I therefore recommend summary dismissal of plaintiff's second cause of action on this basis.

G.   Personal Involvement

In their motion defendants also seek dismissal of plaintiff's claims as against defendants Goord, Selsky and Senkowski, arguing that they are named as defendants in this action only based upon their supervisory capacities.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Each of the three defendants who now raise the personal involvement issue occupies a supervisory position within the DOCS. A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the action; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's allegations against defendant Goord are completely devoid of a tangible connection between his actions and plaintiff's alleged

injuries.  *E.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).  "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson*, 347 F.3d at 435 (quoting *Ayers*).  I therefore recommend dismissal of plaintiff's claims as against defendant Goord on the independent basis of personal involvement.

Plaintiff's allegations regarding defendant Senkowski's involvement are only slightly more substantive.  According to the plaintiff, he corresponded with defendant Senkowski regarding his confinement conditions, alleging that as Superintendent of Clinton Senkowski had a resulting responsibility, but failed, to investigate and remediate the alleged constitutional violations which Rudolph experienced.  *See*, *e.g.*, Rudolph Aff. (Dkt. No. 42) ¶¶ 17-19.  These allegations, even if true, are nonetheless insufficient, without more, to establish the requisite personal involvement on the part of defendant Senkowski in the constitutional violations alleged.  *See Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("It is well-established that an

-34-

allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing *Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)).

Plaintiff's claims against defendant Selsky stand on different footing. Clearly, in his position as Director of Special Housing/Inmate Disciplinary Program and with the resulting responsibility of deciding plaintiff's appeal from his disciplinary determination, defendant Selsky had some personal involvement in and awareness of plaintiff's circumstances, and as such would have been in a position to discern a due process violation.  It is true one could argue that through modifying the disciplinary penalty downward from twenty-four to twenty-two months defendant Selsky did in fact take measures to rectify a potential perceived violation.  Once again, however, affording plaintiff the benefit of all inferences I find that a reasonable factfinder could conclude that defendant Selsky had the requisite personal involvement in the due process constitutional violations alleged.[14]  *Cf.*

---

[14]    There is no evidence of defendant Selsky's awareness of the alleged conditions giving rise to plaintiff's Eighth Amendment claims.  Defendant Selsky is

*McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004).

In sum, I recommend that defendants' motion for summary judgment dismissing plaintiff's claims for lack of personal involvement be granted with regard to defendant Goord and Senkowski, but denied as to defendant Selsky, at least insofar as plaintiff's due process claims are concerned.

H.    Personal Involvement of Other Defendants

The only substantive claims now asserted by the plaintiff which are potentially survivable on the face of defendants' summary judgment motion are those associated with his Eighth Amendment claims, which grow out of the conditions which he claims to have experienced while in SHU confinement.  As outlined above, those claims revolve around Rudolph's allegation that while in segregation he was subjected to unsavory conditions, including mice and bat infestation and the various trappings associated with such a condition.

In order to sustain an Eighth Amendment violation it is necessary to link the conditions experienced to the actions, or inactions, of the particular defendants named, or to assert some other basis for liability

---

therefore entitled to dismissal of Rudolph's cruel and unusual punishment claims based on the lack of his personal involvement in the violations alleged.

against the defendant.  *See Gaston*, 249 F.3d at 166.  In this regard it is
not sufficient to simply state that the defendant at issue had responsibility
for overseeing the conditions experienced by the inmate based solely
upon the defendants' supervisory position.  *See id.*

Moreover, plaintiff's allegations that certain of the defendants in this
case were responsible for due process deprivations that resulted in his
SHU confinement are insufficient to implicate them under the Eighth
Amendment for any conditions outside of the normal conditions to be
expected by an inmate while confined in SHU.  *E.g.*, *Dixon v. Goord*, 224
F.Supp.2d 739, 752 (S.D.N.Y. 2002) (no personal involvement of
defendants who had no knowledge of or responsibility for SHU conditions
when only allegations of culpability against them involved alleged
improprieties at the tier hearing and issuance of the sentence which
resulted in the plaintiff's SHU confinement).  In this instance a thorough
search of the record yields no evidence which would link the remaining
defendants, including Deputy Superintendent J. Wood, Captain Carey,
and Lieutenant Baldwin, to the conditions experienced by plaintiff giving
rise to his cruel and unusual punishment claims.  I therefore recommend
dismissal of those claims as against the remaining defendants based

upon their lack of personal involvement.

     I.    Failure To State A Cause Of Action

In their motion, defendants also argue that plaintiff's claims should be dismissed as against defendant Torreggiani based upon failure to state a claim upon which relief may be granted.[15]  The allegations against defendant Torreggiani are limited to the issuance of a misbehavior report and giving testimony in support of the charges set forth in that report.  The mere act of issuance of a misbehavior report which is not alleged to have been improperly retaliatory in response to the exercise of protected rights, and the giving of testimony, in a disciplinary hearing is insufficient to support a due process violation.  *E.g.*, *Muhammad v. Pico*, No. 02 Civ. 1052, 2003 WL 21792158, at *16-*17 (S.D.N.Y. Aug. 5, 2003) (officer who wrote misbehavior report and testified at hearing not personally involved in alleged due process violation).  Accordingly, plaintiff's claims against defendant Torreggiani fail to set forth a cognizable cause of action, and are thus subject to dismissal on this independent basis.

---

[15]      The failure to state a claim argument is also raised by the defendants on behalf of Wood and Baldwin.  While their involvement in the relevant events is not significantly greater than that of defendant Torreggiani, because they have not appeared in the action, and in any event plaintiff's claims against them are subject to dismissal on the merits, I have not addressed this defense as it relates to plaintiff's claims against them.

V.   <u>SUMMARY AND RECOMMENDATION</u>

_____While plaintiff has sufficiently alleged the deprivation of a

constitutionally cognizable liberty interest associated with his 133 days in

SHU confinement, his procedural due process claims associated with that

deprivation are subject to dismissal both based upon collateral estoppel,

and on the merits.  Accordingly, I recommend dismissal of plaintiff's third

and sixth causes of action on this basis.  I also recommend dismissal of

plaintiff's claims as against defendant Torreggiani, based upon the lack of

any evidence that he participated in a constitutional violation, and

dismissal of plaintiff's claims as against defendants Goord and Senkowski,

and against defendant Selsky insofar as plaintiff's Eighth Amendment

allegations are concerned, based upon their lack of personal involvement.

I recommend denial, however, of defendant's request for dismissal of

plaintiff's due process claims as against defendant Selsky on the basis of

personal involvement, since the allegations against him, though modest,

are sufficiently stated to avoid summary judgment.  I also recommend

dismissal of plaintiff's Eighth Amendment claims based upon plaintiff's

failure to link any of the named defendants to the allegedly

unconstitutional conditions he faced in the SHU.  Finally, I recommend

that defendants' qualified immunity argument be denied in light of the foregoing rulings.

Based upon the foregoing it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 28) be GRANTED and plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:      November 29, 2004
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge